# CASE NO. 20-1767

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

## UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

## DEMETRIUS FLENORY,
*Defendant-Appellant.*

On Appeal from the United States District Court for the
Eastern District of Michigan
No. 05-80955 (Hon. David M. Lawson)

## BRIEF OF APPELLANT DEMETRIUS FLENORY

## ORAL ARGUMENT REQUESTED

Wade G. Fink (P78751)
WADE FINK LAW P.C.
370 E. Maple Rd., Third Floor
Birmingham, MI 48009
(248) 712-1054
wade@wadefinklaw.com
*Attorneys for Appellant Demetrius Flenory*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………....iv

STATEMENT IN SUPPORT OF ORAL ARGUMENT………………………...viii

STATEMENT OF JURISDICTION…………………………………………….1

STATEMENT OF THE ISSUE…………………………………………………2

STATEMENT OF THE CASE AND PERTINENT BACKGROUND………...3

SUMMARY OF THE ARGUMENT…………………………………………..18

ARGUMENT……………………………………………………………………...20

    I.    THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING FLENORY'S MOTION FOR COMPASSIONATE RELEASE……..21

        A.    Procedural and Substantive Unreasonableness………………...22

            1.    *The District Court's Four Sentence Cursory Conclusion That Flenory Failed to Present Extraordinary and Compelling Reasons for Release Was Procedurally Unreasonable in Light of the Significant Amount of Medical Evidence Presented*………………………………………...25

            2.    *The District Court Was Procedurally Unreasonable When it Failed to Explicitly Address Flenory's Argument that His Continued Incarceration Created an Unwarranted Sentencing Disparity Following His Brother, and Co-defendant's Release to Home Confinement*……………...35

    II.    A REMAND IS CRITICAL FOR FUTURE JURISPRUDENCE GIVEN THE MANY LIVES AT STAKE……………………………………..42

CONCLUSION………………………………………………………………...44

CERTIFICATE OF COMPLIANCE…………………………………………...45

CERTIFICATE OF SERVICE……………………………………………...45

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS………..46

# TABLE OF AUTHORITIES

## Cases

*Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586 (2007) …………………………22

*Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456 (2007) …………………*passim*

*United States v. Blackwell*, 459 F.3d 739 (6th Cir. 2006) …………………………24

*United States v. Bowers*, 615 F.3d 715 (6th Cir. 2010) ……………………………23

*United States v. Chambliss*, 948 F.3d 691 (5th Cir. 2020) ………………………..22

*United States v. Dajuan Lamarr Wren*, No. 10-cr-20137
2020 U.S. Dist. LEXIS 156155 (E.D. Mich. Aug. 28, 2020) (unpublished) ………15

*United States v. Flowers*, 963 F.3d 492 (6th Cir. 2020) …………………………..22

*United States v. Gale*, 468 F.3d 929 (6th Cir. 2006) ………………………………43

*United States v. Gapinski*, 561 F.3d 467 (6th Cir. 2009) …………………20, 25, 32

*United States v. Gunter*, 620 F.3d 642 (6th Cir. 2010) ………………………..24, 34

*United States v. Hamid*, 227 F. App'x 475 (6th Cir. 2007) ………………………...42

*United States v. Houston*, 529 F.3d 743 (6th Cir. 2008) …………………………..20

*United States v. Howard*, No. 12-20751
2020 U.S. Dist. LEXIS 149947 (E.D. Mich. Aug. 19, 2020) (unpublished) ………13

*United States v. Jackson*, No. 19-6313
2020 U.S. App. LEXIS 25453 (6th Cir. Aug. 11, 2020) (unpublished) …………..40

*United States v. Kincaid*, 802 F. App'x 187 (6th Cir. 2020) ………………………22

*United States v. King*, 914 F.3d 1021 (6th Cir. 2019) ……………………………...34

*United States v. King*, No. 17-cr-20332
2020 U.S. Dist. LEXIS 165451 (E.D. Mich. Sep. 10, 2020) (unpublished) ..........14

*United States v. Klups*, 514 F.3d 532 (6th Cir. 2009) …………………………...24

*United States v. Madden*, 515 F.3d 601 (6th Cir. 2008) …………………………..34

*United States v. Morgan*, 687 F.3d 688 (6th Cir. 2012) …………………………..22

*United States v. Owdish*, No. 18-20423
2020 U.S. Dist. LEXIS 143547 (E.D. Mich. Aug. 11, 2020) (unpublished) ………14

*United States v. Parrish*, 915 F.3d 1043 (6th Cir. 2019) …………………………..22

*United States v. Peters*, 512 F.3d 787 (6th Cir. 2008) …………………………...32, 34

*United States v. Petrus*, 588 F.3d 347 (6th Cir. 2009) …………………………….24

*United States v. Delgado*, No. 3:18-cr-17-(VAB)-1
2020 U.S. Dist. LEXIS 84469 (D. Conn. Apr. 30, 2020) (unpublished) …………..28

*United States v. Salvagno*, No. 5:02-CR-51 (LEK)
2020 U.S. Dist. LEXIS 109879 (N.D.N.Y. June 22, 2020) (unpublished) ………...13

*United States v. Simmons*, 587 F.3d 348 (6th Cir. 2009) …………………………..40

*United States v. Sims*, 807 F. App'x 436 (6th Cir. 2020) …………………………..24

*United States v. Smith*, 505 F.3d 463 (6th Cir. 2007) ……………………………...24

*United States v. Thomas*, 498 F.3d 336 (6th Cir. 2007) ………………………33, 34

*United States v. Villa-Castaneda*, 755 F. App'x 511 (6th Cir. 2018) ……………….39

*United States v. Vonner*, 516 F.3d 382 (6th Cir. 2008) ………………………..35, 44

*United States v. Wallace*, 597 F.3d 794 (6th Cir. 2010) …………………...20, 40, 41

*United States v. Watkins*, 450 F. App'x 511 (6th Cir. 2011) …………………...40, 41

*United States v. Webb*, 760 F.3d 513 (6th Cir. 2014) ……………………………...21

*United States v. White*, 492 F.3d 380 (6th Cir. 2007) ……………………………...22

*United States v. White*, No. 13-cr-20653-1
2020 U.S. Dist. LEXIS 88542 (E.D. Mich. May 20, 2020) (unpublished) ………...13

## Statutes

18 U.S.C. § 1956(h) …………………………………………………………..3

18 U.S.C. § 3231…………………………………………………………...1

18 U.S.C. § 3553(a) …………………………………………………………*passim*

18 U.S.C. § 3553(a)(2)(A) …………………………………………………..17

18 U.S.C. § 3553(a)(4)(a)(1) ………………………………………………5

18 U.S.C. § 3553(a)(6) ……………………………………………...5, 19, 20, 36

18 U.S.C. § 3553(c) …………………………………………………………23

18 U.S.C. § 3582(c)(1)(A) …………………………………………………4, 26

18 U.S.C. § 3582(c)(1)(A)(i) ………………………………………………..21

21 U.S.C. § 848 …………………………………………………………3

28 U.S.C. § 1291 …………………………………………………………1

## Other Authorities

CDC Updates, Expands List of People at Risk of Severe COVID-19 Illness, CENTERS FOR DISEASE CONTROL AND PREVENTION (Jun. 25, 2020) …..14, 15, 29, 30

COVID-19 Cases, BUREAU OF PRISONS …………………………………………...13

Giuseppe Lippi et al., *Hypertension in Patients with Coronavirus Disease 2019 (COVID-19): a Pooled Analysis*, POLISH ARCHIVES OF INTERNAL MEDICINE (Apr. 30, 2020) ..................................................................14, 15, 29, 30

Hospitalization Rates and Characteristics of Patients Hospitalized with Laboratory-Confirmed Coronavirus Disease 2019, COVID-NET, 14 States, March 1-30, 2020, CENTERS FOR DISEASE CONTROL AND PREVENTION (Apr. 17, 2020) ..................28

Jennifer Lighter et al., *Obesity in Patients Younger Than 60 Years Is a Risk Factor for COVID-19 Hospital Admission*, CLINICAL INFECTIOUS DISEASES (Apr. 9, 2020) ...........................................................................28

Joe Palca, *COVID-19 Vaccine Trial Paused Due to Illness in Volunteer*, NAT'L PUB. RADIO (Sept. 8, 2020) ...............................................................viii

Maria Godoy, *Study Calculates Just How Much Age, Medical Conditions Raise Odds of Severe COVID-19*, NAT'L PUB. RADIO (Mar. 22, 2020) ......................26

Preliminary Estimates of the Prevalence of Selected Underlying Health Conditions Among Patients with Coronavirus Disease 2019 — United States, February 12–March 28, 2020, CENTERS FOR DISEASE CONTROL AND PREVENTION (Mar. 31, 2020) ...........................................................................26

Radwin Kassir, *Risk of COVID-19 for Patients with Obesity*, OBESITY REVIEWS (Apr. 13, 2020) ...............................................................................28

Report of the WHO-China Joint Mission on Coronavirus Disease 2019 (COVID-19), WORLD HEALTH ORG. (Feb. 24, 2020) ..............................................26

Tiernan Ray, *NYU Scientists—Largest US Study of COVID-19 Finds Obesity the Single Biggest 'Chronic' Factor in New York City's Hospitalizations*, ZDNet (Apr. 12, 2020) ................................................................................28

USSG § 1B1.13(2) ...........................................................................22

## **Rules**

Fed. R. App. P. 34(a) ...................................................................viii

Fed. R. App. P. 32(a)(7) ................................................................45

# STATEMENT IN SUPPORT OF ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a), Appellant Demetrius Flenory ("Flenory") requests oral argument. This case involves a voluminous record containing numerous medical studies and expert opinions concluding that Flenory faces an increased risk for severe illness from COVID-19 in light of his underlying health conditions. These are hundreds of pages of work product that the district court failed to consider when denying Flenory's motion for compassionate release. With no end in sight to the global pandemic[1], this Circuit would benefit from clarification as to what a district court must consider or address in an opinion resolving a compassionate release motion. This Circuit would also benefit from clarity on the process and framework for a district court to resolve these motions. Oral argument will aid this Court by allowing it to explore the issues with counsel for Appellant and Appellee. COVID-19 is a disease that has killed almost 1% of the inmates its infected, *ten times* that of the influenza virus. We ask that we be heard.

---

[1] Joe Palca, *COVID-19 Vaccine Trial Paused Due to Illness in Volunteer*, NAT'L PUB. RADIO (Sept. 8, 2020), https://www.npr.org/sections/coronavirus-live-updates/2020/09/08/910863680/covid-19-vaccine-trial-paused-due-to-illness-in-one-volunteer

## STATEMENT OF JURISDICTION

The district court had original jurisdiction over this case under 18 U.S.C. § 3231 and sentenced Appellant Demetrius Flenory to 360 months of custody in 2008. (R. 1075, Judgment, PageID # 6174). In April of 2020, Flenory filed a motion for compassionate release citing concerns for his health due to the global pandemic. (R. 1616, Mtn for Compassionate Release, PageID # 9042-9079). The court was fully briefed and held oral argument, but ultimately denied Flenory's motion without prejudice for failure to exhaust his administrative remedies. (R. 1632, Opinion and Order, PageID # 9649-9662). Flenory moved the court for compassionate release a second time on May 18, 2020. (R. 1637, Second Mtn for Compassionate Release, PageID # 9711-9749). The court denied Flenory's second motion on July 29, 2020. (R. 1686, Opinion and Order, PageID # 10695-10701). Flenory filed a timely notice of appeal on August 11, 2020. (R. 1687, Notice, PageID # 10702). Consequently, this Court has appellate jurisdiction to review the denial of Flenory's motion pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court abused its discretion when it denied Flenory's motion for compassionate release by issuing an opinion that failed to address, in any way, the overwhelming medical evidence presented, including expert testimony, and flatly ignored the argument that Flenory's continued incarceration created an unwarranted sentencing disparity?

Appellant answers: Yes, and a remand is required.

## STATEMENT OF THE CASE AND PERTINENT BACKGROUND

### A. Flenory's Original Case History

On October 19, 2005, Flenory was defendant number two on an indictment for drug distribution charges related to an organization known as the Black Mafia Family ("BMF"). (R. 1, Indictment, PageID # 4). Flenory was alleged to have operated this organization with his brother, Terry Flenory, who was listed as Defendant number one. *Id.* The government contended that as "co-leaders" of BMF, Flenory and his brother directed the distribution of significant amounts of cocaine throughout the United States over a fifteen year period. (*Id*), (R. 1101, Sentencing Transcript, Page ID # 6317).

Flenory ultimately pled guilty to two counts: continuing criminal enterprise, contrary to 21 U.S.C. § 848, and conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h). By Rule 11 plea agreement, Flenory was sentenced to 360 months of imprisonment by the district court on September 12, 2008. (R. 852, Plea Agreement, PageID #3852-3872); (R. 1075, Judgment, PageID # 6174). Flenory's brother and co-conspirator Terry Flenory was also sentenced to 360 months in custody after accepting a virtually identical plea agreement at the urging of Demetrius. (R. 856, Plea Agreement, PageID #3903-3928); (R. 1076, Judgment, PageID # 6181).

## B. First Motion for Compassionate Release

On April 17, 2020, roughly fifteen years into Demetrius Flenory's sentence, the undersigned, on behalf of Flenory, petitioned the Warden of FCI Sheridan for his compassionate release, citing Flenory's high risk for severe illness from COVID-19.[2] (R. 1616-1, Exhibits, PageID # 9083-9084). Five days later, on April 22, 2020, Flenory filed a motion for compassionate release, urging the court to waive the exhaustion requirement contained in 18 U.S.C. § 3582(c)(1)(A) and find that his hypertension and age constituted were compelling and extraordinary circumstances warranting early release. The motion described in greater detail the heightened risk attributable to his hypertension – pointing to CDC findings and other studies cited by another district court. (R. 1616, Mtn for Compassionate Release, PageID # 9066-9067). In addition, a medical study was included which demonstrated that those over the age of 50, like Flenory, were more likely to develop severe complications after contracting COVID-19. (*Id.* at PageID # 9068).

In addition to addressing Flenory's underlying health conditions, his motion for compassionate release attempted to persuade the district court that the 18 U.S.C. § 3553(a) sentencing factors likewise weighed in favor of his release. Flenory

---

[2] *See* appendix at Flenory_005-072 for a copy of Flenory's medical records which have been filed under seal. Such records support assertions made herein along with the other record items i.e. (R. 1637-3, Affidavit of Dr. Willens, PageID # 9754-9766) that are not under seal.

emphasized that his post-sentencing conduct – including multiple BOP classes, intensive programming, and the creation of a non-profit aimed at offering support to troubled youth – demonstrated that he would not return to the activities that landed him behind bars if he was released. (*Id.* at PageID # 9072-9074).

Flenory's motion also specifically addressed § 3553(a)(4)(a)(1), observing that since his sentencing hearing, the Sentencing Commission had lowered the applicable sentencing guidelines pursuant to Amendment 782. (*Id.* at PageID # 9074-9075). Upon a subsequent motion to reduce Flenory's sentence, which would be filed if necessary, Flenory's new sentence would likely be, at maximum, 324 months if the district court re-sentence Flenory to the low end of the guideline range, as it did in his original sentencing. (*Id.* at PageID # 9075). Therefore, Flenory's compassionate release motion observed that, practically speaking, Flenory only had 102 months (of 360) remaining on his sentence at the time the motion. (*Id.*).

Meanwhile, Flenory's brother, Terry Flenory, was released from prison by the Warden at FCI Ashland on May 5, 2020. (R. 1616-1, Exhibits, PageID # 9081). In moving the court for a sentence reduction, Flenory urged the district court to consider § 3553(a)(6), which addresses sentencing disparities, as his continued incarceration would create an unwarranted sentencing disparity in light of the BOP granting his brother Terry Flenory home confinement. (R. 1616, Mtn for Compassionate Release, PageID # 9051, 9076). The brothers had the exact same

culpability in running BMF, took the same plea, and were ultimately given the same sentence. Without action from the district court, the two would be serving greatly disproportionate sentences. (*Id.*)

The government filed a response opposing Flenory's motion for compassionate release on May 1, 2020, arguing that a waiver of exhaustion was not warranted because Flenory had failed to "provide any particularized medical determination that his personal risk of a severe COVID-19 is heightened." (R. 1624, Gov't Response, PageID # 9300). Specifically, the government noted that while BOP medical records confirmed that Flenory has hypertension, the condition was stable and Flenory was being medicated. (*Id.* at PageID # 9295). Furthermore, the government argued, Flenory was "not at a higher risk from COVID-19 because of his age" because he is not elderly. (*Id.* at PageID # 9300).

The government also asserted that Terry Flenory's release to home confinement was justified because the brothers' circumstances were distinguishable. In contrast to Demetrius Flenory, the government stated, "Terry Flenory has multiple serious medical conditions recognized by the CDC that place him at a heightened risk of serious complications." *(Id.* at PageID # 9301). Additionally, the government argued that Terry Flenory had served more of his sentence and had "behaved better while in prison." (*Id.* at PageID # 9301-9302).

On May 3, 2020, Flenory filed his reply brief arguing that the government's assertions regarding his health issues and disciplinary history were not meaningfully different from his brother's. (R. 1627, Def's Reply, PageID # 9490-9504). First, Flenory stressed that Terry Flenory's medical records demonstrated that he suffered from the exact same medical conditions that plague Demetrius Flenory himself – namely hypertension and hyperlipidemia.[3] (*Id.* at PageID # 9497). Second, while Flenory recognized that he had incurred some minor, non-violent, infractions during his 15 years in the BOP, his brother Terry had also been cited for "fighting and refusing to obey an order." (*Id.* at PageID # 9501).

The district court held oral argument on the matter on May 4, 2020. (R. 1634, Hearing Transcript, PageID #9664-9703). Much of the hearing was devoted to the exhaustion issue, which has since been resolved by this Court. However, the undersigned and counsel for the government continued to disagree on whether there were discernable differences between the Flenory brothers. Related to health conditions, the undersigned pointed out that Terry Flenory, whose release the government stated was justified because of his ailments, actually had lower blood pressure and lower cholesterol than Demetrius Flenory. (*Id.* at PageID #9679). The government countered that Terry Flenory is also morbidly obese. (*Id.* at PageID #

_____

[3] *See* appendix at Flenory_073-137 for a copy of Terry Flenory's medical records filed under seal.

9688). Counsel also had differing opinions as to the brothers disciplinary records while incarcerated. The undersigned emphasized that Terry Flenory had incurred a violation more recently than Demetrius and reiterated that he had fought with another inmate. (*Id.* at PageID # 9679-9680). While the government acknowledged that Terry was cited for fighting, it argued that Demetrius had also allegedly been found to be in possession of a hazardous tool. (*Id.* at PageID # 9687).

The district court issued an opinion denying Flenory's motion for compassionate release without prejudice the next day on May 5, 2020. (R. 1632, Order, PageID # 9649-9662). The district court held that although the exhaustion requirement could be waived as a matter of law, it was not persuaded that Flenory presented a compelling enough case to warrant a waiver of the 30-day review period allocated to the BOP by the compassionate release statute. (*Id.* at PageID # 9658-9659). The district court concluded that Flenory had not "made any convincing case that he is at an elevated risk for contracting COVID-19. Although his hypertension puts him at greater risk if he should become infected, that alone is not sufficient." (*Id.* at Page ID # 9660). The opinion also emphasized that FCI Sheridan, where Flenory was and is still currently housed, had yet to report a confirmed case of COVID-19 at the facility. (*Id.*)

Consequently, because the district court found itself devoid of jurisdiction, it did not make a finding as to the § 3553(a) factors. However, the court did note that

there were differences between Flenory and his brother Terry – emphasizing that Terry Flenory is obese, blind in one eye, and required compression stockings in addition to the health conditions that he shared with Demetrius. (*Id.* at PageID # 9653). Furthermore, the district court stated, Terry Flenory had served more of his sentence and had "a clean prison record." (*Id*.).

### C. Second Motion for Compassionate Release

On May 18, 2020, Flenory renewed his efforts to obtain a sentence reduction, and filed a second motion for compassionate release as 30 days had then elapsed since his petition to the Warden of FCI Sheridan. (R. 1637, Second Mtn for Compassionate Release, PageID # 9711-9749). Mindful of the district court's prior skepticism related to Flenory's health conditions and the institutional circumstances at FCI Sheridan, the undersigned consulted with two experts: a Division Head of Internal Medicine at Henry Ford Hospital in Detroit and an epidemiologist. Flenory's second motion accordingly benefitted from the opinion of two health care professionals battling COVID-19 in real time – literally on the front lines.

First, Dr. David Willens, a senior staff physician, division head and academic, testified that "Demetrius Flenory (Mr. D. Flenory) has a number of risk factors associated with severe manifestations of COVID." (R. 1637-3, Affidavit of Dr. Willens, PageID # 9755). Dr. Willens' impressive credentials demonstrate why he

was qualified to make such an assessment, and furthermore, why that conclusion should have been heavily considered – or at the very least addressed.[4]

Ultimately, Dr. Willens concluded that Flenory faced increased risk due to his "age, hypertension and obesity." (*Id.*) Dr. Willens testified that such factors "especially when taken together, place [Flenory] at risk for having a severe COVID case." (*Id.*) Dr. Willens also stated that in his "medical opinion [] each one [of those conditions] could predispose [Flenory] to a more serious course of COVID." (*Id.* at PageID # 9756). Thus, Flenory's second motion for compassionate release argued that his underlying health conditions, which were each addressed in turn, did indeed present extraordinary and compelling reasons for release.

To start, Flenory's motion emphasized the heightened risk his age (51) poses. According to Dr. Willens, "it is extremely clear that each one year-increase in age is an independent risk factor for more severe COVID." (R. 1637, Second Mtn for Compassionate Release, PageID # 9725). The motion next focused on the increased

---

[4] In his affidavit, Dr. Willens explained that in the past several months he had "cared for hundreds of patients in the hospital and ambulatory settings who [were] infected with SARS-CoV-2, the virus that causes COVID-19 [] and counselled many others who [were] at risk." In addition to caring for infected patients, Dr. Willens noted that his "leadership responsibilities [] recently included analyzing current research and setting policies regarding the risks of COVID transmission and susceptibility in patients and healthcare workers." (*Id.*) Consequently, Dr. Willens testified that he was "familiar and up to date with the research and clinical practice applications of the risk factors, diagnosis, treatment and clinical course of COVID." (*Id.*)

risk Flenory faces due to his hypertension. Dr. Willens testified that Flenory's blood pressure was still elevated according to practice guidelines – despite Flenory's prescriptions and designation as a Chronic Care Level 2 Inmate. (*Id.* at PageID # 9725-9726).

Persistent hypertension is especially concerning for Flenory, because "hypertension is highly prevalent in the most severe cases of COVID." (*Id.* at PageID # 9727). Dr. Willens explained that "early research show[ed] that hypertension is an independent risk factor in some patients, increasing the severity of the illness, which can in turn be worsened by their other characteristics." (*Id.*) A CDC study cited in Flenory's motion corroborated Dr. Willens' testimony, which concluded that the condition was associated with increased illness, and reported that those who contracted COVID and had hypertension had a mortality rate of 6%, compared to the .09% fatality rate for persons with no known underlying health issues. (*Id.* at PageID # 9726).

In his second motion, Flenory also claimed an increase risk based on his weight. (*Id.* at PageID # 9727). With a BMI of 30.4 kg/m2 Dr. Willens observed that Flenory is medically obese – and according to Dr. Willens, "[o]besity at any level has [] been linked to more severe COVID, and we have clearly seen this in our patients at Henry Ford Hospital." (*Id.* at PageID # 9728). Two separate medical studies included in Flenory's motion came to similar conclusions, finding that

obesity (defined as a BMI of 30 or higher) was one of the most prevalent comorbidities in those who required hospitalization for COVID-19. (*Id.* at PageID # 9727 at n.7, # 9728 at n.8).

In addition to testifying as to Flenory's risk factors, Dr. Willens also analyzed such factors in comparison to his brother Terry Flenory. Dr. Willens noted that both brothers were in the "same category for risk" based on age, as only one year separated them, and that each brother "has hypertension at a similar stage, which have similar associations with severe COVID." (*Id.* at PageID # 9731). Finally, Dr. Willens acknowledged the varying degrees of obesity between the brothers, but stated "it has been shown that any degree of obesity is associated with increased risk of severe COVID." (*Id*). Therefore, Dr. Willens concluded that "there is little difference between [the Flenory brothers.] Any statement or conclusion to the contrary would not be supported by current research." (*Id.* at PageID # 9732).

Flenory's motion then turned to address the district court's previous contention that Flenory's concern that COVID-19 lurked within FCI Sheridan, despite no positive tests, was too speculative. On this point, Flenory turned to epidemiologist Katie Brasher-Beaudry who testified that "the likelihood that [the virus] is inside of FCI Sheridan already is more probable than not. And if it is not already, it is a virtual certainty that it will be in the relative future." (*Id.* at PageID #

9733). Ms. Brasher-Beaudry has since been cited by multiple district courts[5] and was correct in her prediction, as the virus has since been confirmed at FCI Sheridan. COVID-19 Cases, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Sept. 16, 2020).

Finally, Flenory's second motion for compassionate release provided additional evidence related to the § 3553(a) sentencing factors. Flenory pointed to his job offers and efforts to assist the community by organizing multiple charity events from behind bars to demonstrate that he would not pose a danger to society or be likely to recidivate. (*Id.* at PageID # 9742-43, 9746). Additionally, Flenory once again noted that his continued incarceration would create a sentencing disparity in light of his brother and co-conspirator's release to home confinement. (*Id.* at PageID # 9746). Specifically, Flenory noted that the district court had made an error in its previous opinion by concluding that Terry Flenory had a "clean prison record." (*Id.* at PageID # 9743). Rather, BOP records showed that Terry Flenory had two

---

[5] *United States v. Howard*, No. 12-20751, 2020 U.S. Dist. LEXIS 149947, at *9 (E.D. Mich. Aug. 19, 2020) ("The virus is within Defendant's facility, and once it more fully spreads—which Defendant's expert opines is but a matter of time—Defendant will be one of the individuals most at risk for suffering severe symptoms. The court concludes that this risk weighs in favor of release); *United States v. White*, No. 13-cr-20653-1, 2020 U.S. Dist. LEXIS 88542, at *13 (E.D. Mich. May 20, 2020); *United States v. Salvagno*, No. 5:02-CR-51 (LEK), 2020 U.S. Dist. LEXIS 109879, at *30 (N.D.N.Y. June 22, 2020).

disciplinary infractions, one of which resulted in lost good conduct time and time in solitary confinement. (*Id.*)

On May 28, 2020, the government filed its response to Flenory's second motion. (R. 1654, Govt's Response, PageID # 10067-10092). In its response, the government once again argued that Flenory had failed to present compelling or extraordinary reasons for release. The government asserted that "neither Flenory's hypertension nor Flenory's level of obesity are CDC risk factors" because at the time, the CDC guidelines did not recognized "regular hypertension or obesity at levels less than a BMI of 40" as factors known to increase risk. (*Id.* at PageID #10075-76). Significantly, **the government *and* the CDC** have since reversed course – the CDC changed its guidelines to include those with BMIs of 30 or higher on its list of at risk individuals[6] and the federal government in the Eastern District now concedes that a BMI of 30 or higher constitutes extraordinary and compelling reasons for early release.[7]

---

[6] CDC Updates, Expands List of People at Risk of Severe COVID-19 Illness, CENTERS FOR DISEASE CONTROL AND PREVENTION (Jun. 25, 2020) https://www.cdc.gov/media/releases/2020/p0625-update-expands-covid-19.html

[7] *See, e.g.*, *United States v. Owdish*, No. 18-20423, 2020 U.S. Dist. LEXIS 143547, at *5 n.1 (E.D. Mich. Aug. 11, 2020) ("The government therefore concedes that Owdish's medical conditions, specifically his BMI over 30, qualify as an extraordinary and compelling reason during the COVID pandemic"); *United States v. King*, No. 17-cr-20332, 2020 U.S. Dist. LEXIS 165451, at *11 (E.D. Mich. Sep. 10, 2020) ("Indeed, the Government concedes that because King's obesity subjects him to a 'heightened risk' for severe illness from COVID-

Flenory responded the next day, submitting his reply brief on May 29, 2020. (R. 1658, Def's Reply, PageID # 10326-10340). The brief largely reiterated that Flenory's assertion that his health issues constituted extraordinary and compelling circumstances warranting release was supported by numerous medical studies, and a senior physician and academic who had personal experience treating severe cases of COVID-19. The government, however, relied solely on CDC guidelines – which as noted subsequently changed to comport with medical data – to rebut Dr. Willens and said studies. (*Id.* at PageID # 10328-10330).

On July 6, 2020, Flenory also filed a supplemental brief detailing the new information that had emerged in the month following the completion of the briefing schedule set by the district court. (R. 1677, Def's Supplemental Brief, PageID # 10643-10650). Most relevant on appeal, the supplement brief emphasized the change in CDC guidelines which formally recognized a BMI of 30 as a risk factor for severe COVID-19. (*I*d. at PageID #10648), *see supra* note 6. The CDC's updated guidance also eliminated the specific age threshold connected to heightened risk, and instead warned that "among adults, risk increases steadily as you age, and it's not just those over the age of 65 who are at risk for increased illness." (*Id.*) Finally, hypertension

---

19, 'King has satisfied the first eligibility threshold for compassionate release during the pandemic.'"); *United States v. Dajuan Lamarr Wren*, No. 10-cr-20137, 2020 U.S. Dist. LEXIS 156155, at *9 (E.D. Mich. Aug. 28, 2020) ("the government conceded both in its response brief and at the August 21 hearing on the motion that Wren's severe obesity qualifies as an extraordinary and compelling reason").

is also now listed by the CDC as a condition which may increase risk following the updates. **The changes made to the CDC guidelines largely reflected and confirmed the medical opinion previously given by Flenory's medical expert**. (*Id*. at PageID # 10649).

On July 29, 2020, more than two months after Flenory filed, the district court issued its final order, 6 pages, denying Flenory's motion for compassionate release. (R. 1686, Opinion and Order, PageID # 10695-10701). Before getting to the substance of its denial, the court noted that it had to consider the § 3553(a) sentencing factors "together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction." (*Id.* at PageID # 10698). Ultimately, however, the district court held that Flenory had not presented extraordinary and compelling reasons for release.

First, the court cited the CDC's COVID-19 guidelines, and stated that Flenory "possesses very few of [the] traits" identified by the CDC as "predispose[ing] certain individuals to complications from the virus." (*Id.* at PageID # 10699). According to the district court, "the only conditions which come close to risk factors are [Flenory's] high blood pressure and high cholesterol." (*Id*.) But because BOP medical records show that such conditions were "treated with medication and have

not resulted in any serious or severe complications" the court concluded that they did not warrant "the extraordinary remedy of compassionate release." (*Id*.)

In concluding that Flenory's underlying health issues did not constitute extraordinary or compelling circumstances, the district court did not address, **at all**, the risk Flenory faces due to his weight, despite his BMI of 30.4 being explicitly listed as one of the "traits" which the CDC recognizes as a risk factor for severe illness from COVID-19. (*Id*.) Nor were any medical studies cited. (*Id*.) The district court also did not address, **at all**, Flenory's age.

The district court similarly concluded that § 3553(a) did not militate in favor of Flenory's release. The court specifically pointed to the need to promote respect for the law, § 3553(a)(2)(A), noting that Flenory's 30-year sentence was imposed in light of the serious nature of his crimes and that his "past actions must still be accounted for." (*Id.* at PageID # 10700). While the court made no mention of Terry Flenory or any potential sentencing disparities, the court did highlight Flenory's criminal history and loss of good conduct time while incarcerated. (*Id.* at PageID # 10699). Consequently, the court ultimately concluded that Flenory's medical conditions "do not counterbalance several factors that weigh heavily against a sentence reduction." (*Id.* at PageID # 10701). On August 11, 2020, Flenory filed a timely notice of appeal. (R. 1687, Notice, PageID # 10702).

# SUMMARY OF THE ARGUMENT

Flenory will be released one day, but not if he dies from COVID-19. The district court did not address Flenory's medical arguments and evidence, nor his sentencing arguments, with the required procedural fairness under our Constitution. A remand is required to develop a fair record that addresses Flenory's arguments.

Demetrius Flenory's pursuit of compassionate release occupies over 40 docket entries and hundreds of pages in the lower court record. In these pleadings, Flenory asserted that his underlying health issues, in light of the rapid transmission of COVID-19 within the Bureau of Prisons, constituted extraordinary and compelling reasons warranting his early release. Flenory's position was supported by detailed affidavits from two separate medical experts (one of which leads an entire division of medicine and treats COVID-19 patients) and numerous medical studies. In both of the district court's opinions denying compassionate release, however, the court failed to address the wealth of medical information submitted by Flenory. Instead, the district court allocated only a few sentences to conclude that the risk posed by Flenory's health conditions was not great enough to qualify as extraordinary and compelling without so much as citing any evidence in the record. In fact, in the last opinion the district court failed altogether to address one of the health conditions that Flenory contended increased his susceptibility to serious health complications were he to contract COVID-19.

Flenory submits that such a cursory dismissal of his medical arguments was procedural error, as the Supreme Court requires a district court to "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decision making authority." *Rita v. United States*, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468 (2007). Four sentences in an order, expressing opinion without reference to medical data, does not demonstrate that the district court had a reasoned basis for rejecting the conclusions of a division head of internal medicine, an epidemiologist, and various medical studies, in favor of its own – especially considering such conclusions were largely confirmed as accurate by subsequent revisions to the CDC guidelines, published prior to the court's decision.

Similarly, Flenory submits that the district court also committed procedural error when it failed to address a reoccurring argument Flenory raised as to 18 U.S.C. § 3553(a)(6). Much discussion was had, through briefing and at oral argument, regarding the impact of D-1's, Terry Flenory's, release from prison in May. The similarities between the brothers' health conditions and behavior while incarcerated, and therefore a possible sentencing disparity, was hotly contested. While the district court implicitly distinguished the brothers in its first opinion denying compassionate release, it did so on the basis of inaccurate information and never even paid passing mention to it in the second. The second opinion made no mention of Terry Flenory

or § 3553(a)(6), period. Consequently, the record does not reflect that the "district judge considered [Flenory's] argument and [] explained the basis for rejecting" the "non-frivolous" argument as this Circuit requires. *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010) (citing *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009).

On appeal Flenory is not asserting, yet, that "the sentencing judge should have weighed the circumstances differently." *United States v. Houston*, 529 F.3d 743, 756 (6th Cir. 2008). Rather, Flenory contends that the district court was procedurally unreasonable in denying his motion for compassionate release because it "faile[d] to even acknowledge" Flenory's sentencing factor argument and the medical evidence which dominated significant portions of the briefing. *Wallace*, 597 F.3d at 805. Flenory, therefore, urges this Court to remand so that a sufficient finding can be made on the record, enabling appellate review.

## ARGUMENT

A district court cannot abuse its discretion if it does not use discretion in the first place. And that is the issue here.

The district court in this case, apparently, rejected the testimony of a medical doctor, who is the head of a division of internal medicine, and who is tasked with treating hundreds of COVID patients on a daily basis, without so much as sentence devoted to his thoughtful, reasoned medical opinion. The district court similarly

dismissed a reoccurring sentencing factor argument with no accompanying explanation. After hundreds of hours of work, and hundreds of pages of briefing, the district court denied the motion in six pages that was devoid of any real analysis or substance. For these reasons, this Court should send this case back to the district court for proper, thoughtful findings on the arguments raised by Flenory.

Flenory will be released one day, but not if he dies from COVID-19. The district court should be required to address his arguments about his health risks and the sentencing factors.

## I. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING FLENORY'S MOTION FOR COMPASSIONATE RELEASE.

In the last six months Demetrius Flenory has petitioned his sentencing court for compassionate release two separate times. Although a district court generally has no authority to modify a sentence once imposed, 18 U.S.C. § 3582(c)(1)(A)(i) permits a court to do so in limited circumstances. *United States v. Webb*, 760 F.3d 513, 518 (6th Cir. 2014). To grant such relief, the district court must first determine that (1) "extraordinary and compelling reasons warrant [] a reduction"; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) that consideration of the "factors set forth in section 3553(a) to the extent they are applicable" also supports a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Thus, a district court must also find that the defendant seeking a sentence reduction "is not a danger to the safety of any other person or community"

pursuant to the corresponding Sentencing Commission policy statements. USSG § 1B1.13(2).

Despite multiple motions and extensive briefing, the district court ultimately declined to grant Flenory compassionate release – initially because Flenory had failed to exhaust administrative remedies, and later because Flenory had not persuaded the court that his health conditions constituted extraordinary and compelling circumstances. This Court reviews a "district court's denial of compassionate release for an abuse of discretion standard." *United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (citing *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020)). An abuse of discretion occurs if a district court relies on "clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law." *United States v. Flowers*, 963 F.3d 492, 497 (6th Cir. 2020) (quoting *United States v. White*, 492 F.3d 380, 408 (6th Cir. 2007)).

## A.    Procedural and Substantive Reasonableness

"A criminal sentence must be both procedurally and substantively reasonable." *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019) (quoting *United States v. Morgan*, 687 F.3d 688, 693 (6th Cir. 2012)). Procedural reasonableness requires a district court to, among other things, consider the § 3553(a) sentencing factors, select a sentence based on facts that are not clearly erroneous, and adequately explain the chosen sentence. *Gall v. United States*, 552

U.S. 38, 51, 128 S. Ct. 586, 597 (2007). Conversely, substantive reasonableness analyzes whether "taking into account the totality of the circumstances, . . . the § 3553(a) factors, on the whole do not justify the sentence imposed." *United States v. Bowers*, 615 F.3d 715, 725 (6th Cir. 2010). Flenory submits that in denying his motion for compassionate release, the district court was procedurally unreasonable because it failed to sufficiently explain its reasoning behind the cursory rejection of Flenory's medical and sentencing disparity arguments.

The requirement that a sentencing judge adequately explain its sentencing decisions comes from 18 U.S.C. § 3553(c)'s mandate that district courts "state in open court the reasons for its imposition of the particular sentence." The Supreme Court, in *United States v. Rita*, highlighted the importance of such a requirement – noting that "[j]udicial decisions are reasoned decisions. Confidence in a judge's use of reason underlies the public's trust in the judicial institution. A public statement of those reasons helps provide the public with the assurance that creates that trust." 551 U.S. at 356, 127 S. Ct. at 2468.

Although a district court must give a statement of reasons, it is not required to produce "a full opinion in every case" to be procedurally reasonable. Rather, "[t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances," and "[t]he law leaves much, in this respect, to the judge's own professional judgment." *Id.* at 356. However, if a sentencing judge

exercises his discretion to issue a brief explanation, it must still "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority."

Consequently, this Court has long required a district court to "consider all non-frivolous arguments" raised by a defendant in support of a lower sentence. *United States v. Gunter*, 620 F.3d 642, 645-46 (6th Cir. 2010) (citing *United States v. Blackwell*, 459 F.3d 739, 774 (6th Cir. 2006)). Just how much explanation a district court must give in response "depends on the unique circumstances in each sentencing." *United States v. Sims*, 807 F. App'x 436, 441-42 (6th Cir. 2020) (quoting *United States v. Klups*, 514 F.3d 532, 537 (6th Cir. 2009). For example, "[w]here a matter is . . . conceptually simple . . . and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively." *Rita*, 551 U.S. at 359, 127 S. Ct. at 2469. Therefore, "'a district court's failure to address each argument [presented by the defendant] head-on will not lead to automatic vacatur if the context and the record make the court's reasoning clear." *United States v. Petrus*, 588 F.3d 347, 352 (6th Cir. 2009) (quoting *United States v. Smith*, 505 F.3d 463, 468 (6th Cir. 2007)).

But, in the event that a district court fails to adequately explain a sentence, a claim of procedural unreasonableness arises. The remedy for such error requires the matter to be remanded with instructions for the district court to consider arguments

previously left unaddressed. *Gapinski*, 561 F.3d at 477-78 ("we conclude that Gapinski's sentence was procedurally unreasonable and therefore vacate Gapinski's sentence and remand for resentencing") (collecting cases). Flenory submits that a remand is necessary here, as the district court's opinion denying his motion for compassionate release did not contain a sufficient explanation for rejecting his voluminous amount of medical evidence.

    1.   ***The District Court's Cursory Four Sentence Conclusion That Flenory Failed to Present Extraordinary and Compelling Reasons for Release Was Procedurally Unreasonable in Light of the Significant Amount of Medical Evidence Presented.***

The global pandemic has highlighted the importance of procedural reasonableness, which requires a court to acknowledge a defendant's arguments and subsequently explain the rationale underlying its decision. Compassionate release is an extraordinary remedy and often requires district courts to undertake complex medical analysis. With the lives of hundreds of federal inmates on the line, now more than ever, a district court must "articulate reasons, even if brief" for denying or granting such relief, as it "assures reviewing courts (and the public)" that the judgment was a reasoned one. *Rita*, 551 U.S. at 357, 127 S. Ct. at 2469.

In his first motion for compassionate release, Flenory contended that his underlying health conditions – namely his age, hypertension, and hyperlipidemia – constituted compelling and extraordinary reasons warranting release. In support,

Flenory pointed to two medical studies[8], including one conducted by the CDC, which concluded that hypertension increased an individual's risk for severe COVID-19. (R. 1616, Mtn for Compassionate Release, Page ID # 9066 at n. 26, 9067). An additional study cited in Flenory's motion concluded that those over the age of 50 were two and a half times more likely to develop severe complications if infected with COVID-19.[9] (*Id.* at PageID # 9068 at n. 27).

Nevertheless, the district court denied Flenory's motion primarily because he had yet to satisfy the administrative exhaustion requirement contained in § 3582(c)(1)(A). (R. 1632, Opinion and Order, PageID # 9649). However, the district court did make a point to state that Flenory had not "made any convincing case that he is at an elevated risk for contracting COVID-19. Although his hypertension puts him at a greater risk if he should become infected, that alone is not sufficient." (*Id.*

---

[8] Preliminary Estimates of the Prevalence of Selected Underlying Health Conditions Among Patients with Coronavirus Disease 2019 — United States, February 12–March 28, 2020, CENTERS FOR DISEASE CONTROL AND PREVENTION (Mar. 31, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/pdfs/mm6913e2-H.pdf; Report of the WHO-China Joint Mission on Coronavirus Disease 2019 (COVID-19), WORLD HEALTH ORG. (Feb. 24, 2020), https://www.who.int/docs/default-source/coronaviruse/who-china-joint-mission-on-covid-19-final-report.pdf (cited in *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 U.S. Dist. LEXIS 58718, at *19 n.13 (E.D. Pa. Apr. 1, 2020)).

[9] Maria Godoy, *Study Calculates Just How Much Age, Medical Conditions Raise Odds of Severe COVID-19*, NAT'L PUB. RADIO (Mar. 22, 2020), https://www.npr.org/sections/coronavirus-live updates/2020/03/22/819846180/study-calculates-just-how-much-age-medical-conditions-raise-odds-of-severe-covid

at PageID # 9658-59). This conclusion was not accompanied by any medical studies, citations, or any further explanation.

In light of the rapidly evolving medical knowledge regarding COVID-19 and risk factors for severe disease, Flenory consulted with Dr. David Willens, a senior staff physician and Division Head of Internal Medicine at Henry Ford Hospital in Detroit before filing his second motion for compassionate release. Prior to reviewing Flenory's medical records, Dr. Willens had "analyz[ed] current research regarding the risks of COVID transmission and susceptibility" as part of his leadership responsibilities in caring for "hundreds of patients in the hospital and ambulatory setting infected with SARS-CoV-2, the virus that causes COVID-19." (R. 1637-3, Affidavit of Dr. Willens, PageID # 9755). Dr. Willens was accordingly "familiar and up to date with the research and clinical practice applications of the risk factors, diagnosis, treatment and clinical course of COVID" when he proffered testimony regarding Flenory's risk factors. (*Id.*)

Based on his in depth knowledge of the emerging medical research, Dr. Willens testified that Flenory was not only at risk due to his age, hypertension, and hyperlipidemia, but also faced increased risk because of his weight. While the CDC only recognized a BMI over 40 as a risk factor at the time, Dr. Willens emphasized that Flenory was still medically obese with a BMI of 30.4 and testified that "[o]besity at any level has [] been linked to more severe COVID, and we have clearly seen this

in our patients at Henry Ford Hospital." (*Id.* at PageID # 9756).  Yet Dr. Willens did not just rely on his personal experience on the front lines battling COVID-19, but also formed his medical opinion based on six separate peer reviewed medical studies cited in his affidavit.[10] (*Id.* at Page ID # 9757-58). Flenory's motion added two studies separate from Dr. Willens' articles that similarly found that obesity (defined as a BMI of 30 or higher) was one of the most prevalent comorbidities in those who required hospitalization for COVID-19.[11] (R. 1637, Mtn for Compassionate Release, at PageID # 9727 at n.7, # 9728 at n.8). **Dr. Willens would turn out to be way ahead of the curve**, as the CDC and the government now recognize a BMI over 30

---

[10] *See, e.g.,* Jennifer Lighter et al., *Obesity in Patients Younger Than 60 Years Is a Risk Factor for COVID-19 Hospital Admission*, CLINICAL INFECTIOUS DISEASES (Apr. 9, 2020), https://academic.oup.com/cid/article/71/15/896/5818333 l;  Radwin Kassir, *Risk of COVID-19 for Patients with Obesity*, OBESITY REVIEWS (Apr. 13, 2020), https://onlinelibrary.wiley.com/doi/full/10.1111/obr.13034; Giuseppe Lippi et al., *Hypertension in Patients with Coronavirus Disease 2019 (COVID-19): a Pooled Analysis*, POLISH ARCHIVES OF INTERNAL MEDICINE (Apr. 30, 2020), https://pubmed.ncbi.nlm.nih.gov/32231171/.

[11] Hospitalization Rates and Characteristics of Patients Hospitalized with Laboratory-Confirmed Coronavirus Disease 2019, COVID-NET, 14 States, March 1-30, 2020, CENTERS FOR DISEASE CONTROL AND PREVENTION (Apr. 17, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6915e3.htm?s_; Tiernan Ray, *NYU Scientists—Largest US Study of COVID-19 Finds Obesity the Single Biggest 'Chronic' Factor in New York City's Hospitalizations*, ZDNet (Apr. 12, 2020), *available  at* https://www.zdnet.com/article/nyu-scientists-largest-u-s-study-of-covid-19-finds-obesity-the-single-biggest-factor-in-new-york-critical-cases/ (cited in *United States v. Delgado*, No. 3:18-cr-17-(VAB)-1, 2020 U.S. Dist. LEXIS 84469, at *8 (D. Conn. Apr. 30, 2020)

to be a serious risk factor. *See* CDC Updates, Expands List of People at Risk of Severe COVID-19 Illness, *supra* note 6; *supra* note 7.

Dr. Willens likewise offered significant testimony as to Flenory's hypertension and the risk it posed to individuals in light of the virus spreading throughout the BOP. Hypertension, Dr. Willens stated, "is highly prevalent in the most severe cases of COVID" and "early research show[ed] that hypertension is an independent risk factor in some patients, increasing the severity of illness, which in turn can be worsened by their other characteristics." (R. 1637-3, Affidavit of Dr. Willens, PageID # 9756). Dr. Willens also testified that Flenory's blood pressure was still elevated according to guidelines used for doctors in treating hypertensive patients. Thus, medical practice guidelines demonstrated that Flenory's condition was not "mild and stable" contrary to the government's earlier assertion. R. 1624, 9312.

Flenory's second motion for compassionate release asserted that he had presented extraordinary and compelling reasons for release once more. However, this time Flenory claimed increased risk for a severe case of COVID-19 based on his weight, in addition to his hypertension. Significantly, Flenory's conclusion was now supported by not only a medical doctor and academic who was treating hundreds of COVID-19 patients, but also by numerous medical studies. The government's response to Flenory's second motion for compassionate release

maintained that Flenory's conditions were not extraordinary or compelling, solely based on hypertension and a BMI of 30's absence from the CDC's list of recognized risk factors. (R. 1654, Gov't Response, PageID # 10075).

Flenory's subsequent reply brief noted that:

> in order to accept the government's argument that that Flenory is ineligible for compassionate release because his underlying conditions are not explicitly listed on this [the CDC's website], **it would require a total rejection of our experts' opinions and a rejection of overwhelming reliable medical data, including other parts of the CDC website**.

(R. 1658, Def's Reply, PageID # 10331) (emphasis added).

Before the district court issued its final opinion on Flenory's motion for compassionate release, the CDC itself accepted the medical conclusions made by Dr. Willens weeks prior – lowering the BMI recognized as increasing an individual's risk for severe illness from 40 to 30 and adding hypertension to the list of conditions which may heighten risk. *See* CDC Updates, Expands List of People at Risk of Severe COVID-19 Illness, *supra* note 6. Flenory made the district court aware that the CDC guidelines now explicitly recognized two of his health conditions as risk factors through a supplemental brief.  (R. 1677, Def's Supplemental Brief, PageID # 10648-49).

The district court denied Flenory's second motion for compassionate release on July 29, 2020. (R. 1686, Opinion and Order, PageID # 10695-10701). The six-

page opinion failed to address Flenory's wealth of evidence – including numerous medical studies, an extensive professional medical opinion, and recently updated CDC guidelines. Instead, it implicitly rejected them in four sentences. In concluding that Flenory's health conditions did not present extraordinary and compelling reasons for release, the court stated:

> And the Centers for Disease Control and Prevention (CDC) have advised that certain traits among the population predispose certain individuals to complications from the virus, should they become infected.
>
> Flenory possesses very few of those traits. The only conditions which come close to risk factors are his high blood pressure and high cholesterol. His medical records show that they are treated with medication and have not resulted in any serious or severe complications. But even accepting that Flenory's medical conditions put him at some elevated level of risk, which is not a given, he still has not demonstrated that he is entitled to the extraordinary remedy of compassionate release.

(*Id.* at PageID # 10699).

Such a cursory dismissal of Flenory's medical arguments, which occupied an extensive part of the record, and were far more dire according to medical experts, did not constitute an adequate explanation for the court's decision. The opinion did no analysis of Flenory's medical expert's opinion or underlying medical studies. Instead, the court simply stated that Flenory had very few CDC-recognized risk factors – without addressing Flenory's BMI of 30.4 kg/m2 which was indeed formally recognized by the CDC weeks before the court issued its opinion. In fact,

nowhere in the six page opinion was Flenory's assertion that he faced increased risk for severe illness due to his obesity even acknowledged as an argument. The obesity argument, supported by a recent change in CDC guidelines, medical studies, and a medical professional, comprised a significant portion of Flenory's briefing but was not allocated a single sentence in response by the district court.

The district court's opinion does not make clear that the court "listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account" in concluding that Flenory's health conditions, namely his hypertension and obesity, did not constitute compelling and extraordinary reasons for release. *Gapinski*, 561 F.3d at 474 (quoting *Rita*, 551 U.S. at 358, 127 S. Ct. at 2469). Consequently, Flenory submits that the district court's failure to adequately explain its decision was procedurally unreasonable, necessitating remand in order to establish a sufficient record for meaningful appellate review.

Indeed this Court has remanded for re-sentencing where the record similarly did not "make clear that the sentencing judge listened to" a defendant's major arguments. In *United States v. Peters*, a defendant's sentence was vacated where the district court failed to adequately respond to a defendant's argument that he should be sentenced to time served in light of a list of mitigating factors. 512 F.3d 787 (6th Cir. 2008). On appeal this Court found that, "besides a cursory statement

acknowledging defendant's arguments" the district court "did not address the 'time served' argument or the mitigating factors" cited by the defendant. *Id*. at 788. Consequently, because the sentencing judge did not "address the 'parties' arguments' and 'explain why he [] rejected those arguments'" the subsequent sentence was deemed procedurally unreasonable and remanded for re-sentencing. *Id.* at 789 (citing *Rita*, 551 U.S. at 357, 127 S. Ct. at 2468).

Another defendant's case was similarly remanded for re-sentencing in *United States v. Thomas*, 498 F.3d 336 (6th Cir. 2007). There, a defendant had submitted a sentencing memorandum which discussed, among other things, the "nonviolent nature of [the] crime . . . that a sentence below the applicable guideline range would protect the public from any further crimes by [the defendant] given his age, and noted [the defendant's] rehabilitative efforts." *Id.* at 339. At sentencing, the only reference to such arguments were made in passing when the district court stated that it "had received, read, and understood the sentencing memorandum." *Id.* at 341. This Court found that the sentencing judge's "conclusory statement left [it] unsure as to whether the district court adequately considered and rejected [the defendant's] arguments regarding proper application of the § 3553(a) factors or whether it misconstrued, ignored, or forgot [the defendant's] arguments." *Id.* Thus, because a number of the defendant's arguments went "unmentioned and unaddressed" the resulting sentence was deemed procedurally unreasonable and vacated. *Id.*

The circumstances of Flenory's compassionate release litigation finds similarities in the cases previously deemed procedurally unreasonable by this Court. Here, like in *Peters*, the district court rejected Flenory's argument that his health conditions presented compelling and extraordinary reasons for release in a four sentence "cursory statement." 512 F.3d at 788-789. In fact, Flenory's assertion about the increased risk he faced due to his obesity went completely "unmentioned and unaddressed" by the district court, like in *Thomas*. 498 F.3d at 341. Such an omission has to lead this Court to question whether the sentencing judge "ignored, or forgot" about Flenory's substantial arguments related to his obesity. *Id.* In either case, the district court's explanation for its ruling was inadequate and procedurally unreasonable.

Flenory's arguments as to his medical conditions were lengthy and supported by complex evidence, including pages of expert opinion and medical studies. And while a "sentencing judge is not required to explicitly address every [] argument a defendant makes," Flenory's assertions regarding his hypertension and obesity were not "raised only in passing" or "conceptually simple." *United States v. King*, 914 F.3d 1021, 1026-27 (6th Cir. 2019) (quoting *United States v. Madden*, 515 F.3d 601, 611 (6th Cir. 2008)). Likewise, this was not a case where "the court perhaps could have said more, [but] certainly could have done less." *Gunter*, 620 F.3d at 647 (declining to find a sentence procedurally unreasonable where the district court had

meaningfully considered the case and mitigating arguments, demonstrated by the court's "uncommon familiarity with the facts, and "clear and straightforward" explanation of its decision). Instead, here, the district court was completely silent – in regards to Flenory's medical evidence and his obesity contentions. Flenory, therefore respectfully urges this Court to remand the matter for a sufficient finding on his medical conditions. *United States v. Vonner*, 516 F.3d 382, 405 (6th Cir. 2008) ("By neglecting to specify a rationale for its decision, the district judge failed to provide the public, [Flenory], or this Court with the assurance that its judgment was in fact a reasoned one.").

> **2. *The District Court Was Procedurally Unreasonable When it Failed to Explicitly Address Flenory's Argument that His Continued Incarceration Created an Unwarranted Sentencing Disparity Following His Brother and Co-Defendant's Release to Home Confinement.***

In addition to failing to provide an adequate explanation of its rejection of Flenory's medical contentions, the record demonstrates that the district court was also procedurally unreasonable in ignoring Flenory's sentencing disparity argument. The day before Flenory filed his first motion for compassionate release he learned that the BOP had approved his brother, Terry Flenory, for release to home confinement. The government, on multiple occasions, previously assigned equal culpability to the brothers, labeling them "co-leaders" and asserting that they established and headed Black Mafia Family together. (R. 1101, Sentencing

Transcript, Page ID # 6317); (R. 1, Indictment, PageID # 4). Consequently, it was no surprise that Demetrius and Terry Flenory were offered and accepted identical plea deals and ultimately received the same sentence. (R. 1616, Mtn for Compassionate Release, PageID # 9051); (R. 852, Demetrius Flenory Plea Agreement, PageID #3852-3872); (R. 856, Terry Flenory Plea Agreement, PageID #3903-3928).

In his first motion for compassionate release, Flenory contended that the § 3553(a) sentencing factors militated towards his release. Specifically, Flenory urged the court to consider § 3553(a)(6) and the need to avoid unwarranted sentencing disparities. Two individuals who committed the same crime and received the same sentence were now serving drastically different sentences – one still behind bars and one home with family.

In an attempt to distinguish the brothers in its response, the government asserted that Terry Flenory's release was justified, because Terry had "multiple serious medical conditions recognized by the CDC that place him at a heightened risk of serious complications were he to contract COVID-19." (R. 1624, Gov't Response, PageID # 9301). In contrast, Demetrius Flenory's release was not warranted, the government contended, because Demetrius only suffered from hypertension and failed to demonstrate that "his personal risk of a severe case of COVID-19 is heightened." *Id.* at PageID # 9311-12. However, a review of Terry

Flenory's medical records revealed that the "multiple serious medical conditions" he suffered from included the same medical conditions which plagued Demetrius – hypertension and hyperlipidemia. (R. 1627, Reply, Page ID #9497). Flenory's subsequent reply brief questioned the government's inconsistent and illogical positions regarding the increased risk posed by hypertension. (*Id.*) The brothers similarities and dissimilarities was also covered at oral argument by both parties.

In addition to trying to distinguish the Flenory brothers based on their medical conditions to counter the sentencing disparity argument, the government also alleged there were meaningful differences in the brothers' disciplinary history while incarcerated. "Terry Flenory ha[d] behaved better while in prison" according to the government because Demetrius Flenory had incurred infractions[12] which resulted in lost good conduct time and time in solitary confinement. (R. 1624, Gov't Response, PageID # 9302). In his reply brief, Flenory recognized that while he had incurred some violations, Terry's disciplinary history also showed violations[13] which cost

---

[12] BOP documents show that Demetrius Flenory was cited for: possessing intoxicants (drinking) in 2008, possessing intoxicants in 2009, possessing a hazardous tool (cell phone) twice in 2011 twice, possessing an unauthorized item (small piece of razor blade that was found in an incoming package, Flenory denied the allegation and the reports show it related to a parcel delivery) in 2011, and placing money on another inmate's account so he could shop in commissary in 2015. *See* appendix at Flenory_001-003 **UNDER SEAL**

[13] BOP documents show that Terry Flenory was cited for fighting with another inmate and refusing to obey an order in 2010, as well as possessing an unspecified unauthorized item in 2017. *See* appendix at Flenory_004 **UNDER SEAL**

him good conduct time and a stint in solitary confinement. Indeed, BOP documents demonstrated that Terry had been cited for refusing to obey an order and fighting with another inmate, which the government conceded at oral argument.

Despite the government's explicit recognition of misconduct by Terry Flenory while incarcerated and the continued emphasis in Flenory's briefings on Terry's disciplinary history, the district court erroneously concluded that "Terry had a "clean prison record" in its first opinion denying compassionate release. (R. 1632, Opinion and Order, PageID # 9653). The district court's opinion, however, did not explicitly address Flenory's sentencing disparity argument. Rather, the opinion seemed to suggest that the brothers were distinguishable by highlighting that Terry was obese, blind in one eye, and required compression stockings.

In Flenory's second motion for compassionate release, he renewed his argument that his continued incarceration created an unwarranted sentencing disparity in light of his co-conspirator's release to home confinement. Flenory, respectfully, highlighted that the district court had previously erred in concluding that Terry Flenory had a "clean prison record." (R. 1647, Mtn for Compassionate Release, PageID # 9743-44). That was not true.

Additionally, this time, Flenory's expert Dr. Willens analyzed the medical differences between the brothers and testified that "[c]omparing Mr. D. Flenory's risk to his brother, Terry Flenory, and the risk of severe COVID cases, my

professional opinion is that there is little difference between these two individuals. Any statement or conclusion to the contrary would be not be supported by current research." (R. 1637-3, Affidavit of Dr. Willens, Page ID # 9756). Dr. Willens explained that both brothers were "in the same category of risk for severe COVID-19" due to age; suffered from "hypertension at a similar stage, which have similar associations with severe COVID"; and both were "obese to differing degrees." (*Id.* at PageID # 9756-57). Dr. Willens further expanded on obesity, noting that because there was

> limited research on the magnitude of risk incurred by mildly to moderately differing degrees of obesity, drawing conclusions about, and distinctions in, the risk of severe COVID based on the differences in BMI between the Flenory brothers would be too speculative at this time. They are both at similar risk.

(*Id.* at PageID # 9757).

In issuing its second opinion denying Flenory's motion for compassionate release, the district court omitted any conclusions or findings related to Flenory's disparity argument. Flenory's new expert medical testimony – this time in regard to the lack of meaningful difference between the Flenory brothers' medical conditions – was once again not even mentioned in passing. Flenory's efforts to correct the misinformation regarding Terry's disciplinary history were similarly not addressed.

As previously stated, an appeal of a "district court's sentencing decision involves an inquiry into the decision's procedural and substantive reasonableness."

39

*United States v. Villa-Castaneda*, 755 F. App'x 511, 519 (6th Cir. 2018). This Court has noted that, "as a procedural matter, the district judge must generally speak to arguments that are clearly presented and in dispute" when making a sentencing decision. *United States v. Simmons*, 587 F.3d 348, 361 (6th Cir. 2009). However, this does not mean a sentencing court must "provide a ritual incantation of every [] guidelines factor." *United States v. Jackson*, No. 19-6313, 2020 U.S. App. LEXIS 25453, at *7-8 (6th Cir. Aug. 11, 2020). If a defendant's arguments "lack[] any factual basis or legal merit" or are "conceptually straightforward" such contentions do not require an explicit acknowledgement. *Simmons*, 587 F.3d at 361.

This Court has previously vacated and remanded a sentence when the district judge failed to adequately address a non-frivolous argument relating to sentencing factors. For example in *United States v. Wallace*, the case was remanded where the record demonstrated that the sentencing judge "did not even make a cursory mention of the disparity in sentences" between the defendant and her co-defendant. 597 F.3d 794, 804 (6th Cir. 2010). This Court found the district judge's silence on the issue to be procedurally unreasonable because the sentencing disparity argument "**was the central point of [the defendant's] argument for a lower sentence**." *Id.* at 803 (emphasis added).

Similarly in *United States v. Watkins*, a district court's sentence was found to be procedurally unreasonable because the court never addressed the defendant's

contention that his sentence was disproportionate in light of the sentence imposed on a separate individual who had committed more crimes. *United States v. Watkins*, 450 F. App'x 511 (6th Cir. 2011). This Court vacated and remanded the sentence, emphasizing that "the record d[id] not demonstrate that the district court listened to, understood, or considered [the defendant's] disparity argument because it provided no explanation whatsoever." *Id.* at 517.

Like in *Wallace*, Flenory's sentencing disparity argument was one of his main justifications for compassionate release but did it not receive adequate acknowledgement by the district court. The contention that a disparity would arise should Flenory continue to serve his sentence behind bars while his co-conspirator and brother Terry did so at home was a major point of contention between the parties throughout the litigation. Flenory submitted a detailed and credible expert opinion regarding the health conditions between the brothers and the government presented the disciplinary histories of the men while incarcerated.

The district court did address or give an express conclusion as to whether Terry's release to home confinement had created a sentencing disparity. Moreover, the second opinion omitted any reference to the argument altogether, and "did not even make a cursory mention of the [potential] disparity in sentences." *Wallace*, 597 F.3d at 804. Indeed, the words "Terry Flenory" and "sentencing disparity" were completely absent. Consequently, the totality of the record does not demonstrate that

the district judge "listened to, understood, or considered [Flenory's] disparity argument." *Watkins*, 450 F. App'x at 517. *Cf. United States v. Hamid*, 227 F. App'x 475, 478 (6th Cir. 2007) (upholding a sentence where the transcript demonstrated "that the district court gave strong consideration to the need to avoid unwarranted sentence disparities" and addressed the developed arguments raised by the defendant). Remand is necessary to create a record that will enable sufficient appellate review.

## II. A REMAND IS CRITICAL FOR FUTURE JURISPRUDENCE GIVEN THE MANY LIVES AT STAKE

COVID-19 has ravaged the United States and the Bureau of Prisons for almost six months. More than 13,000 inmates have been infected and 120 have died. Many more will die. The federal judiciary has accordingly been inundated with compassionate release motions from federal inmates seeking release because of the dangers they face in the global pandemic. Demetrius Flenory is one such inmate who sought relief because of his health conditions. The resulting litigation was complex – spanning months and over 40 docket entries. Numerous medical studies were introduced, expert opinions were submitted, and a major update to the CDC's COVID-19 guidelines occurred while Flenory's case was pending. To further complicate matters, Flenory's brother and co-conspirator, was released to home confinement by the BOP itself.

The district court's subsequent opinions denying compassionate release did not demonstrate that the court had meaningfully considered the arguments or wealth of evidence contained in Flenory's pleadings. The district court dismissed Flenory's health concerns in four sentences, without addressing an opinion from a senior staff physician that concluded otherwise. Moreover, absent from this cursory dismissal was any mention of Flenory's obesity and its accompanying risks – which constituted one of his major arguments and was later validated by CDC guidelines. The district court similarly failed to acknowledge or respond to Flenory's sentencing disparity argument and even made an erroneous factual finding relating to it. Flenory submits that the district court's summary dismissal of his motions for compassionate release was procedurally unreasonable and asks this Court to remand so that sufficient findings can be made. *United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006) ("When, on appeal, a defendant's argument and supporting evidence presents [sic] an arguably meritorious claim for a lesser sentence, but there is little to suggest that the district court actually considered it, then remand may be appropriate.").

The procedural reasonableness requirement ensures that a district court has given meaningful thought to the circumstances of a defendant's case before imposing a sentence, thereby preventing a man's liberty, and here, potentially his life, from being stripped or taken away without meaningful thought. However, in the midst of a global pandemic and with COVID-19 still raging throughout the Bureau

of Prisons, the stakes have been raised. When ruling on a motion for compassionate release, the district court may very well be making life and death decisions. Consequently, the need to make sure such rulings "are reasoned decisions" has never been greater. *Rita*, 551 U.S. at 356, 127 S. Ct. at 2468. Additionally, if a district court can dismiss the opinion of medical professionals and medical data in favor of its own opinion without even providing a justification, "the public's confidence in the fairness of our criminal justice system" will certainly be undermined. *Vonner*, 516 F.3d at 405. This Circuit would benefit from a ruling from this Court detailing what considerations a court must take into account before rendering a decision that may result in loss of life – as has tragically happened for 120 inmates in the BOP so far.

## CONCLUSION

For the foregoing reasons, this Court should remand consistent with the discussion and argument in this brief.

Respectfully Submitted,

WADE FINK LAW, P.C.

/s/ Wade G. Fink (P78751)
370 E. Maple Rd., Third Floor
Birmingham, MI 48009
248-712-1054
wade@wadefinklaw.com
*Attorneys for Appellant Demetrius Flenory*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rules 32(a)(7) and (g) of the Federal Rules of Appellate Procedure, the undersigned certifies that this brief complies with the type-volume limitation and contains no more than 13,000 words. This brief contains 10,978 words in 14 point proportionally-spaced font, Times New Roman, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7).

/s/ Wade G. Fink
Attorney for Demetrius Flenory

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of September 2020, a copy of the foregoing Brief of Defendant-Appellant, was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ Wade G. Fink
Attorney for Demetrius Flenory

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Description of Entry | Record No. | Page ID |
|---|---|---|
| Indictment | 1 | 1-29 |
| Demetrius Flenory Plea Agreement | 852 | 3852-3872 |
| Terry Flenory Plea Agreement | 856 | 3093-3928 |
| Judgment of Defendant | 1075 | 6173-6179 |
| Judgment of Terry Flenory | 1076 | 6180-6181 |
| Transcript of Sentencing Hearing | 1101 | 6310-6320 |
| First Motion for Compassionate Release | 1616 | 9042-9079 |
| Government's Response Brief | 1624 | 9291-9316 |
| Defendant's Reply Brief | 1627 | 9490-9503 |
| Order Denying Compassionate Release Without Prejudice | 1632 | 9649-9662 |
| Transcripts of Hearing on Motion for Compassionate Release | 1634 | 9664-10134 |
| Second Motion for Compassionate Release | 1637 | 9711-9749 |
| Affidavit of Dr. David Willens | 1637-3 | 9754-9766 |
| Government's Second Response Brief | 1654 | 10067-10092 |
| Defendant's Second Reply Brief | 1658 | 10326-10340 |
| Defendant's Supplemental Brief | 1677 | 10643-10650 |
| Second Order Denying Compassionate Release | 1686 | 10695-10701 |

| Notice of Appeal | 1687 | 10702 |
|---|---|---|